No. 2985

Second Circuit

---

THE CONTINENTAL SUPPLY COMPANY v. KAPLAN & SON

---

(Dec. 21, 1927.    Opinion and Decree.)
(Feb. 3, 1928.    Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Appeal—Par. 625.**
The finding of the trial court as to matters of fact, namely: the amount of pipe which plaintiff received, being clearly correct, is affirmed.

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. Percy Sandel, Judge.

Action by The Continental Supply Company against M. Kaplan & Son.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Stubbs & Thompson, Monroe, attorneys for plaintiff, appellee.

Hudson, Potts, Bernstein & Sholars, Monroe, attorneys for defendant, appellant.

ODOM, J.   On April 19, 1926, plaintiff and defendant entered into a contract under which defendant, M. Kaplan & Son, were to sell and deliver to plaintiff, The Continental Supply Company, 21,120 feet of 4-inch iron piping at an agreed price of 37 cents per foot, less a discount of 2% for cash.

Anticipating that all the pipe would be delivered and that the price would be paid in cash, M. Kaplan & Son drew on the Supply Company for $7,658.11, the full amount due under the contract.

The draft was promptly honored and paid.

The Supply Company now contends and alleges that only 13,581 feet of the piping was delivered to it, leaving a shortage of 7,538 feet which, at the contract price, was worth $2,733.49, and that therefore it had overpaid Kaplan & Son that amount, which it sues to recover back.

It is further alleged that on July 16th of the same year, the Supply Company purchased from M. Kaplan & Son 420 (should be 480) feet of 12-inch piping at $2.00 per foot, amounting to $960.00, for which it has not paid, and it credits Kaplan & Son with that amount, leaving due it an alleged balance of the difference between $2,733.49 and $960.00, or $1,773.49, for which this suit is brought.

M. Kaplan & Son, in answer, denied any shortage in the delivery of the pipe and

alleged that they had complied with their contract and delivered all that was ordered and that they were not overpaid, and reconvened for $960.00, the value of the 12-inch pipe.

Admittedly, if Kaplan & Son delivered all of the 4-inch pipe ordered, the reconventional demand should be allowed.

On the contrary, if the Supply Company's contentions are correct, it had a right to deduct the $960.00 from the amount it overpaid Kaplan & Son on the 4-inch pipe, and the reconventional demand should be rejected.

The sole issue to be determined is, whether Kaplan & Son delivered all the pipe ordered and, if not, what amount was delivered, and that involves a question of fact only.

According to the survey and plat in evidence, the 4-inch pipe line laid by the Supply Company is 21,140 feet long. It ordered from Kaplan & Son 21,120 feet of piping, or approximately enough for the line. Its contention is and its witnesses swear that not all of the pipe which went into the line was delivered by Kaplan & Son but that Kaplan & Son delivered what 4-inch pipe they had on hand and stopped delivery and that in order to avoid delays it caused to be shipped to it from Norphlet, Arkansas, a car load, or 7,617 feet of piping, which it used to complete the line. It arrives at the amount of piping delivered by Kaplan & Son by deducting the 7,617 feet shipped from Norphlet and used from the total length of the line.

In addition to the testimony of plaintiff's witnesses that not all the piping used in the line came from M. Kaplan & Son, we observe that M. S. McGuire, who hauled and placed the greater portion of the piping along the line, testified that he hauled from the supply of M. Kaplan & Son as long as it lasted and then hauled and distributed that which the Supply Company had shipped in the car from Norphlet. McGuire is positive that not all the pipe in the line was supplied by M. Kaplan & Son.

We think plaintiff has conclusively made out its case on that point.

In support of their contention that they delivered all of the pipe in the line, or 21,120 feet, Kaplan & Son offered and filed in evidence written memoranda or delivery tickets made out by either one or the other members of the firm or by Mr. Outman, their salesman. These tickets or delivery slips purport to show each load hauled and the number of joints and feet in each load. We closely scrutinized and checked these slips, and our conclusion is that they hurt, rather than help, defendants' case.

Defendants offered in evidence three pads containing carbon copies of these checks or slips and identified them as "D2", "D3" and "D4". In the pad marked "D3", there are 28 sheets, each sheet showing a load of pipe and the number of feet. Of these 28 sheets, six of them show that the delivery was made to the hauler, Eason, the total number of feet being 2,405. The other sheets show 22 loads delivered to the hauler McGuire, the total number of feet delivered to him being 13,306, or a total of 15,711 feet delivered to Eason and McGuire.

Twenty-four of these sheets are signed with the initials of either David Kaplan, M. Kaplan or Outman. The other four are signed "Fred". David Kaplan, M. Kaplan and Mr. Outman each testified that each and every load that went out to plaintiff was delivered and checked by either one or the other of them, and they identified the sheets showing loads delivered by them, and we note that the court excluded all sheets not so identified.

The testimony does not show who "Fred" was or what he had to do with the deliveries. His name was never mentioned by any of the witnesses. Hence, there is no proof that "Fred" delivered any pipe to the haulers for plaintiff.

Deducting the number of feet shown on the slips signed "Fred", or 2,287, from the total number of feet shown by all the 28 sheets, we have left 13,424 feet, which lacks exactly 187 feet of being what plaintiff contends it received from defendants.

These totals may not be absolutely accurate, but they are substantially so.

Thus far we have not considered all the sheets produced by defendants.

The pad marked "D2" has in it six sheets purporting to show delivery to the plaintiff of six loads or 2301 feet of 4-inch piping. But, unlike the sheets in pad "D3", they do not show to whom or to what hauler this pipe was delivered, whereas, each and every one of the sheets in pad "D3" show to what hauler delivery was made. It is strange that defendants did not think to show on these particular sheets who received this pipe as they did on the others.

Again, three of these sheets are dated April 19th, 1926, the very day on which the order for the pipe was placed, two on April 20th, one day later, and one April 23rd, three days later, and more than thirty days previous to the date on which plaintiff began to lay its line, according to the testimony of plaintiff's employees and of Eason and McGuire.

Not only that, but the sheets in pad "D3" are dated May 29th, 30th, 31st and June 1st and 16th. According to the undisputed testimony, plaintiff began to lay its line on May 29th. Eason's books show and he testified that he hauled one day,

May 29th, and McGuire said he began to haul the next day.

Now, taking up the sheets in pad "D4", we find therein six sheets purporting to represent or show the delivery of six loads or 3,197 feet of 4-inch piping. These sheets, like those in pad "D2", do not show to whom these deliveries were made, as do all those in pad "D3".

And adding the number of feet shown by "D2", or 2,405, and the number of feet shown by "D4", or 3,197, or a total of 5,602, to the total number of feet shown in "D3", or 15,711, we have a grand total of 21,112 feet shown by all these sheets, which is the total amount that Kaplan & Son say they delivered; so that they must get credit for the pipe shown on all of these sheets if they prevail.

Further noticing the sheets in pad "D4", we observe that two of them are dated May 29th and the other four May 30th. These are the dates shown by two of the slips in pad "D3". This shows that the purported deliveries as shown by "D4" and "D3" were being made at the same time. The Messrs. Kaplan and Mr. Outman say that these sheets were all made out when and as the deliveries were made. If that be true, the question arises, Why are not these slips in pad "D3"? Why did they use two different pads to show simultaneous deliveries?

That would be easily accounted for if they had used all the sheets in pad "D3", for then they would have needed another pad; but by actual count there are fifteen blank original and that many blank duplicate sheets left in pad "D3" unused. It might be surmised, of course, that the blank sheets in "D3" were overlooked; but that theory falls when it is noted that the used sheets in "D3" come in consecutive order and are dated May 29th, 30th, 31st

and June 1st, 10th, 11th, 12th, and 16th. (Among these are four sheets made out to Arthur Smith.) Then follow the blank sheets in the back of the pad.

So it seems clear that defendants were using two pads at the same time. Why? It seems to us that an explanation was due. And none was made.

We do not overlook the fact that David Kaplan testified that some of the pipe was hauled on trucks belonging to plaintiff, and it might be suggested that the purported deliveries shown in pads "D2" and "D4", none of which show to whom deliveries were made, as do all of those in "D3", were made to plaintiff's drivers on its trucks.

That argument, however, we think, would be rather weak, because it would seem that there was as much reason to show to whom deliveries were made in the one case as in the other.

Not only that, but each of plaintiff's employees who testified on their part said that none of its trucks were used to handle the pipe and that it was all hauled by McGuire and Eason. McGuire says that Eason hauled one day and strung the pipe through the Green property to the Stubbs property and that he took it up there, and "I strung every foot of it from there on". (Evidence, page 47.)

The testimony shows that Eason used a truck and hauled only one day, and he says he rented the truck. McGuire used teams only. Therefore, the only truck used was the one which Eason rented.

There is no testimony that any 4-inch pipe was delivered by Kaplan & Son to plaintiff and used elsewhere than on this particular line.

Our conclusion is, that the lower Court correctly held that defendants delivered to plaintiffs only the amount of pipe which plaintiff says it received, and the judgment is therefore affirmed with costs.